USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                              :
UNITED STATES,                                                :
                                                              :
                                                              :
                                                              :
         -v-                                                  :      1:10-cr-457-GHW
                                                              :
                                                              :
GILBRILLA KAMARA,                                             :      ORDER
                                                              :
                                        Defendant.            :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

On July 3, 2025, Gilbrilla Kamara, acting through his retained counsel, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Dkt. No. 122 (the "Motion"). The Motion is not Mr. Kamara's first application for early release presented to this Court—it is his fourth. The Court denied Mr. Kamara's first two requests for compassionate release on October 4, 2021. Dkt. No. 103. In that order, the Court concluded, after an evaluation of the factors under 18 U.S.C. § 3553(a) ("Section 3553(a)") that a reduction in the defendant's sentence was not warranted. The Court denied Mr. Kamara's third request for compassionate release, as well as a motion to reconsider its prior decision, by order dated April 20, 2022. Dkt. No. 109. In it, the Court again concluded that a modification of the defendant's sentence was not warranted based on the Court's assessment of the relevant sentencing factors under Section 3553(a). In his most recent application, Mr. Kamara makes a much more persuasive argument that there are "extraordinary and compelling" reasons for his release, but the Court concludes that the Section 3553(a) factors continue to weigh against his early release.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that

"extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)). As relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons." The "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Such circumstances include, but are not limited to, circumstances where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." 1 U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant, however, must not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § B1.13(2)–(3). "[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

In his Motion, Mr. Kamara asserts that he made a request to the warden of his facility for compassionate release and that it was denied. Motion at 9-10. Therefore, the Court accepts that Mr. Kamara has satisfied the statutory preconditions to his application.

The Court assumes without holding that the information provided in Mr. Kamara's applications is sufficient to meet his burden to demonstrate the existence of exceptional and compelling reasons for his release. Mr. Kamara's Motion chronicles the substantial health issues that he currently faces. He suffers from a litany of "less severe, but nonetheless contributing ailments" including "gout, hypertension, Type 2 diabetes, anemia, PTSD, cranial nerve disorder, retinopathy and tuberculosis." *Id.* at 4-5.

Mr. Kamara also suffers from two truly severe ailments. First, he has an inoperable brain tumor, which causes him "dizziness, nausea and blurred vision . . . ." *Id.* at 5. A medical expert retained by Mr. Kamara in support of his Motion reviewed Mr. Kamara's medical records and opined that "Mr. Kamara will more than likely die within the next two years due to his terminal brain cancer and comorbid conditions." *Id.* at 8. Second, Mr. Kamara has chronic stage V kidney disease. *Id.* at 5. That condition requires that Mr. Kamara receive dialysis—he receives the treatment three times a week at his prison. *Id.* at 6.

In its opposition to Mr. Kamara's motion, Dkt. No. 125 ("Opp."), the Government argues that Mr. Kamara has not made a sufficient showing that he suffers from a terminal illness. The Government correctly observes that Mr. Kamara's assertion that his illness is terminal relies exclusively on the opinion of his retained expert, who has not examined Mr. Kamara personally, and who has instead relied exclusively on a review of Mr. Kamara's medical records. *Id.* at 5. The Government notes that even Mr. Kamara's expert acknowledges that those records have not yet categorized Mr. Kamara's illness as terminal: "The opinion of Dr. Feigert—who has never examined Kamara and concedes that Kamara's brain condition typically has a '5-year survival rate,' Motion at 8—should not override BOP's determination, based on numerous in-person evaluations, that any diagnosis of terminal illness would be premature." *Id.* at 6.

The Government also emphasized that Mr. Kamara "offers no argument or evidence that he

3

is receiving inadequate care from the BOP or that he is unable to navigate the prison environment. To the contrary, Kamara's medical records confirm that he is receiving regular and comprehensive care." *Id.* As Mr. Kamara's medical records detail, Mr. Kamara is receiving comprehensive treatment while incarcerated at FCI Butner—including treatment for his cancer and kidney conditions at Duke Regional Hospital. Mr. Kamara does not argue that his treatment is deficient.

While the arguments presented by the Government might support the conclusion that Mr. Kamara has failed to demonstrate exceptional and compelling circumstances for his release, the Court need not reach that issue here. That is because in considering all of the § 3553(a) factors, the Court does not believe that a reduction in Mr. Kamara's sentence is warranted.

Mr. Kamara accepted responsibility for conspiring to import an enormous amount of cocaine into the United States—at least 200 kilograms. The Honorable William H. Pauley III sentenced Mr. Kamara to 240 months after an evaluation of all of the sentencing factors under § 3553(a). Dkt. No. 71. The Court later reduced Mr. Kamara's sentence by 5 months to 235 months. Dkt. No. 96.

Evaluating the Section 3553(a) factors here, the Court does not believe that a further reduction in Mr. Kamara's sentence is warranted. Mr. Kamara's crime was extremely serious. A lesser sentence would not reflect the seriousness of the offense and impose a just punishment.

Nor would a lesser sentence meet the need for specific deterrence. As the Court previously observed, the Court would be returning Mr. Kamara to the place where he committed the prior offense without meaningful constraints on his ability to return to the commission of similar offenses. The Court has weighed Mr. Kamara's arguments that the need for personal deterrence has been lessened because his substantial illnesses decrease the likelihood that he will again engage in crime. But it is worthy of emphasis that Mr. Kamara's criminal conduct did not rely on his physical prowess. As detailed during his sentencing, Mr. Kamara was the leader of an extensive criminal

4

organization. He planned his criminal conducted coordinated it through communications with others.

The Court appreciates the impact of Mr. Kamara's ailments, but does not conclude that they will prevent him from committing the kind of offense for which he was convicted. As the Court observed in ruling on a recent application by Mr. Kamara, despite his physical infirmities, there is no evidence that Mr. Kamara lacks the mental capacity and ability required to coordinate and plan the kind of criminal conduct for which he was convicted.[1] The need for personal deterrence will not be served by Mr. Kamara's early release notwithstanding his ailments.

A lesser offense would also not serve the goal of general deterrence—international drug traffickers should expect to face substantial consequences for conspiring to import large quantities of drugs into the United States. The defendant's current sentence is consistent with the advisory sentencing guidelines range.

The defendant's need for medical care has increased substantially since he was initially sentenced. However, that factor does not weigh heavily enough to outweigh the other factors considered by the Court. Unfortunately, Mr. Kamara has developed a number of serious illnesses since he was originally sentenced. But they are being treated well within the BOP system. There is no indication on the record that an earlier release is required in order to help him obtain appropriate medical care.

The defendant's conduct while incarcerated is not of such a nature that it leads the Court to believe that a reduction in his sentence is warranted in light of the heavy weight the Court affords to

---

[1] *See* March 27, 2024 Order, Dkt. No. 119 at 4 ("However, the Court pauses again to note that Mr. Kamara's argument, while wrong, is far from irrational. In the NPRM, the Sentencing Commission notes that several stakeholders raised the question presented by Mr. Kamara. In the Motion, Mr. Kamara has engaged in a close textual reading of the Sentencing Guidelines, and presented a coherent, well-reasoned argument. By doing so in the short window following his receipt of the Order, Mr. Kamara has demonstrated his continuing mental capacity. Given the recent correspondence provided to the Court describing Mr. Kamara's failing health, Dkt. No. 111, the Court is pleased to see this evidence that Mr. Kamara's mental capacity remains strong, as reflected in his thoughtful submission.").

the need to impose a just punishment and to achieve the goals of personal and general deterrence. The Court previously described the defendant's conduct in prison as "largely meritorious." However, as the Government identifies, Mr. Kamara's conduct has not been exemplary. In the last 10 years, Mr. Kamara has incurred seven disciplinary infractions, including one as recently as April 2025. Opp. at 7.

In sum, assuming that the reasons provided by Mr. Kamara in his Motion constitute "extraordinary and compelling" reasons for his release, following a comprehensive review of the Section 3553(a) factors as applied in his case, the Court finds that reduction in Mr. Kamara's sentence is not warranted. Accordingly, Mr. Kamara's motion is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 122.

SO ORDERED.

Dated: September 22, 2025

_____
GREGORY H. WOODS
United States District Judge